# United States District Court

SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)
Express Mail EB657971857US addressed to Tom Johnstone, 3110 Chateau Way, Lemongrove, CA 91945 with a return address of Gary Wright, 2313 E 3rd St. Panama City, Fl 32401.

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER: '08 MJ 0069

I, ____P. G. Garn____ being duly sworn depose and say:

I am a(n) ____US Postal Inspector____ and have reason to believe
         Official Title

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)
The above described Mail article, which is in the custody of the U.S. Postal Service

in the Southern _____ District of California _____
there is now concealed a certain person or property, namely (describe the person or property)
Materials, and documents reflecting the distribution of controlled substances through the United States Mail including money paid or negotiable instruments for controlled substances, in violation of Title 21 United States Code Section(s) 841(a)(1), 843(b) and 846 which is evidence.

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
Property that constitutes evidence of the commission of a criminal offense, contraband, the fruits of a crime, things Otherwise criminally possessed and property designed and intended for use and which is and has been used the Means for committing a criminal offense.

in violation of Title _21_____ United States Code, Section(s) _841(a)(1), 843(b) and 846_____
The facts to support the issuance of a Search Warrant are as follows:
See attached affidavit of Postal Inspector P.G. Garn

Continued on the attached sheets and made a part hereof.    ☒ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

_1/9/08_____    at    _San Diego, Cal_____
Date                                         City and State
LOUISA S. PORTER
U.S. MAGISTRATE JUDGE
_____          _____
Name and Title of Judicial Officer         Signature of Judicial Officer

AFFIDAVIT FOR SEARCH WARRANT

I, P. G. Garn, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector assigned to the San Diego Field Office of the Postal Inspection Service and am detailed to the San Diego Integrated Narcotic Task Force as a Task Force Officer. My duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following parcel:

   Express Mail EB657971857US addressed to Tom Johnstone, 3110 Chateau Way, Lemongrove, CA 91945 with a return address of Gary Wright, 2313 E 3rd St. Panama City, Fl 32401.

3. I have been employed as a Postal Inspector for over 17 years, and have been employed by the Postal Service for over 22 years. I am currently assigned to the San Diego Narcotic Task Force as a Task Force Officer. In 1990 and 1995, I received formal training from the Postal Inspection Service regarding individuals using the U.S. Mail to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances transactions. I have also received formal training from the California Highway Patrol (1994) and United States Postal Inspection Service (1992) regarding the illicit use of controlled substances and the objective symptomatology of individuals who are under the influence of controlled substances. In 1994, I received formal training from the Drug Enforcement Administration (DEA) regarding narcotic investigations including street, mid-level, and major trafficking organizations; presumptive field testing, drug recognition, objective symptomatology of drug use, and investigative techniques. In 2002, I received formal drug interdiction training sponsored by the Drug Enforcement Administration conducted in San Diego, CA regarding drug interdiction investigations as well as national and

international drug trafficking trends. In June and July 2003, I received formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. In August 2003, I received formal training from the DEA. In May 2005, I received additional formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. In August 2007, I received formal training from the Department of Justice OCDEFT and Asset Forfeiture programs on international and national drug trafficking trends. Since, 1994, I have been a member of the California Narcotics Officer Association and have received formal and informal training from this organization as well as read articles written by members regarding drug trafficking and narcotics investigations. Since 1994, I have been a member of the Western States Information Network and have received briefings on drug trafficking trends and investigations by agents, officers, prosecutors and analysts as well as conducted training for other officers, agents, prosecutors and analysts involved in narcotics investigations. I have also conducted training for Postal Inspectors regarding the use of the Postal service to facilitate drug trafficking and money laundering as well as officials with the Australian Federal Police, San Diego Sheriff's Office and San Diego Police Department.

4. Since 1991, I have been involved in hundreds of investigations involving the shipment of controlled substances including marijuana, methamphetamine, cocaine, heroin, opium and pharmaceuticals as well as drug proceeds through the U.S. Mail and other commercial shipping companies such as Federal Express and United Parcel Service (UPS). I have also investigated individuals who have used Postal Money Orders to launder the proceeds from controlled substance transactions. These investigations have resulted in the seizure considerable amounts of illicit drugs, drug

2

related assets and drug related evidence as well as numerous arrests of individuals for violations of federal and state controlled substances laws.

5. Based upon my training, experience and discussions with other agents, I know the following in summary:

  (a) Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

  (b) The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

  (c) Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

  (d) It is also known that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

  (e) Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

3

1. Items sent via "Express Mail" or "Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2. "Express Mail" is usually requested to be delivered by the next day's mail.

3. "Priority Mail" is usually requested to be delivered within two days of mailing.

4. Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

5. Any delay to the mail is an indication to the mailer the mailed item(s) have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

6. The information contained in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers and Postal employees. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

4

7. On January 8, 2008, Inspectors Kelly Cain, Kim Kelly, Richard Tanael and I were conducting a routine interdiction at the Midway Processing and Distribution Facility in San Diego, CA. We became suspicious of Express Mail EB657971857US addressed to Tom Johnstone, 3110 Chateau Way, Lemongrove, CA 91945 with a return address of Gary Wright, 2313 E 3rd St. Panama City, Fl 32401, for reasons which included:

   A. The size, shape and appearance appeared simialr to parcels previously identified which contained drug proceeds.

   B. I learned from Postal employees that the listed retun address for the sender (2313 E 3rd St, Panama City, Florida) is non-existent.

   C. The zipcode of mailing 32428 is different from the zip code listed for the return address 32401. I know from previous investigations that criminals will attempt to conceal their identities by mailing parcels containing drugs or drug proceeds from Post Offices with different zip codes than what they list for the return address.

8. On January 8, 2008, Inspectors Tanael, Kelly, Cain and I went with Chula Vista Police Department Agent Don Clark to 3110 Chateau Way to conduct further investigation and the following occurred in summary:

   We contacted Miguel Martinez at the residence. Martinez said he did not know the listed addressee, Tom Johnstone. Martinez said he had lived at this residence for six years, did not know anyone in the neighborhood by the name of Johnstone and did not know anyone in Florida. Martinez said he

5

was not expecting any parcels and had not been asked to receive parcels for anyone at his residence. Martinez signed a written disclaimer of ownership for the parcel.

9. On January 8, 2008, Inspector Kelly Cain met with Customs Officer Matthew Villalobos and his trained drug detection dog, Nero. Officer Villalobos and his dog conducted an exterior inspection of the subject parcel. Officer Villalobos said Nero did not alert to the odor of controlled substances. Inspectors then secured the parcel pending an application for a search warrant.

10. I have been advised of the qualifications of the dog handler, Officer Villalobos and his narcotic detection dog as described in Attachment A, which is filed in conjunction herewith and incorporated by reference herein.

11. In addition, Detective Steve A. Sloan, Dog Trainer for the San Diego Police Department Canine Training Section, certifying official for the California Narcotic Canine Association and a court recognized narcotic detection canine expert, told me the following in summary:

    A. Because of the absorption of the odor of controlled substances, and the narcotics detection canine's inherently keen sense of smell, the narcotic detection canine will continue to alert on the container or item depending on the length of exposure to the controlled substances, the specific controlled substance and the ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been Detective Sloan's experience that a properly trained narcotic detection canine will not alert to all currency. Detective Sloan said the most relevant factor regarding alerts on currency is the threshold amount of narcotic odors that is set in the training of the narcotics detection canine. Detective Sloan's experience is that canine training must include the establishment of a lower threshold of approximately one gram of a controlled substance or more to ensure the canine is alerting to

6

more than the average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These substances have included food, plastic bags and wrap, tape controlled substance adulterants. Circulated and non-circulated U.S. currency. Proofing is a method used in training to ensure the canine alerts only to odors for which it is trained to alert.

12. I know from previous investigations involving the shipment of drug proceeds via US Mail and private couriers of occasions when drug proceeds were located in parcels by law enforcement particularly money orders where trained drug detection dogs did not alert to the presence of the odor of controlled substances.

13. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe notes and/or currency from the illegal sale and mailing of controlled substances are being concealed in the Express Mail article as described and seek the issuance of a search warrant directing the search of the articles as described above and the seizure of the article, any currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

P. G. Garn
Postal Inspector

Sworn to before me, and subscribed in my presence, on this 9 day of Jan., 2008.

U. S. Magistrate Judge

7

**Attachment A**

MAY 16 2007

828 Harmony Hollow Road
Front Royal, VA 22630

**U.S. Customs and Border Protection**

ENF-3-04-OTD:CBP:CC-FR MS

MEMORANDUM FOR: Director, Field Operations
San Diego

FROM: Director, CBP Canine Center – Front Royal, Virginia
Office of Training and Development

SUBJECT: Certification of Narcotics and Concealed Human Detection Capability

The following canine enforcement teams are certified in the detection of heroin, cocaine, marijuana, methamphetamine, ecstasy, hashish, and concealed human detection. These detector dogs are the property of U.S. Customs and Border Protection (CBP) and graduated on May 10, 2007.

| Dog/Brand | # | Customs Officer | Port | Class # |
|---|---|---|---|---|
| Lolla | CF-96 | Lucy Coburn | San Diego | CBP379021307 |
| Dusty | CF-97 | Benjamin Joseph | San Diego | CBP379021307 |
| Rita | CF-98 | David A. Ragsdale | Calexico | CBP379021307 |
| Kurow | CF-99 | Gene V. Smithburg | San Diego | CBP379021307 |
| Nero | CG-01 | Matthew C. Villalobos | San Diego | CBP379021307 |

The above dogs are reliable in the detection of the substances indicated and can also be expected to detect other dangerous drugs due to chemical processing similarities. It is recommended that these teams be routinely used in all work environments.

This memorandum is record that the identified canine enforcement teams have successfully passed all the CBP canine narcotic and concealed human detection training tests at a level that well exceeds the preponderance of the evidence standard used in judicial proceedings. This document may be released in criminal discovery proceedings.

If any further assistance or information is required, I may be contacted at (540) 631-2600.

Lee T. Titus


RECEIVED MAY 21 2007